# United States Court of Appeals for the Federal Circuit

---

**CHRISTOPHER JOHNSON,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2025-1017

---

Appeal from the United States Court of Federal Claims in No. 1:24-cv-00245-CFL, Senior Judge Charles F. Lettow.

---

Decided:  August 4, 2026

---

MICHELE R. VOLLMER, Penn State Law Veterans and Servicemembers Legal Clinic, Pennsylvania State University, University Park, PA, argued for plaintiff-appellant. Also represented by JASON W. MANNE, Manne Law Office, Pittsburgh, PA.

CATHERINE M. YANG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY, KRISTIN ELAINE OLSON, BRETT SHUMATE.

---

Before DYK, SCHALL, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

In February 2024, Plaintiff-Appellant Christopher Johnson filed a complaint in the United States Court of Federal Claims seeking military disability retirement backpay and benefits arising from his 1992 discharge from the United States Marine Corps. The Court of Federal Claims dismissed the complaint as untimely under the Tucker Act's statute of limitations. Mr. Johnson now appeals, contending that the trial court erred in determining that his claims accrued more than six years before he filed his complaint. He argues that, instead, the Court of Federal Claims should have applied exceptions to the default rule for determining when a claim accrues – exceptions known as the "reopening rule" and the "half-a-legal-loaf doctrine" – which would have resulted in his claims being timely.

We agree with the Court of Federal Claims that neither of these exceptions applies here. Therefore, we affirm.

I[1]

Mr. Johnson served as a machine gunner in the Marine Corps from February 1991 until August 1992. In October 1991, Mr. Johnson was involved as a passenger in a motor vehicle accident while off-duty and off-base; he sustained severe injuries. A Naval Hospital Commander determined that his injuries were sustained in the line of duty (an "LOD determination"). Thereafter, a military psychologist diagnosed Mr. Johnson as having cognitive impairment, resulting from the accident, and ordered him to refrain from

---

[1] The pertinent facts are undisputed. They are drawn from the complaint, the government's motion to dismiss, the associated briefing and exhibits, and the trial court's opinion.

critical aspects of his job, including guard duty, being on the firing range, and driving government vehicles. Neither the Commander nor the psychologist made a determination as to whether Mr. Johnson's injuries rendered him unfit for duty.

Mr. Johnson's case was then referred to a Physical Evaluation Board ("PEB"). A PEB, which consists of a medical officer and two line officers, acts on behalf of the Secretary of the Navy to review a service member's entire medical record. *See* Secretary of the Navy Instruction 1850.4E §§ 1004(a), 4202(a). The PEB then reaches its own findings as to (1) fitness to serve and (2) whether injuries occurred within the line of duty. *See id.* at §§ 1004, 3301-414 (setting forth standards for determining eligibility for benefits); *see also id.* at §§ 4101-11 (PEB policies).

The PEB issued a decision in June 1992. While the PEB concluded that Mr. Johnson was unfit for duty – and therefore should be discharged from the Marine Corps – it did not agree with the Commander that he had sustained his injuries in the line of duty. Instead, the PEB determined that the injuries he suffered in the car accident were "due to intentional misconduct," presumably based on Mr. Johnson's decision to be a passenger in a vehicle driven by an intoxicated driver. J.A. 28. This adverse LOD determination rendered Mr. Johnson ineligible for severance pay and medical retirement benefits.

After the findings of the PEB were recorded in Mr. Johnson's military records, he was entitled to challenge them by filing an application with the Board for Correction of Naval Records ("BCNR"). The BCNR's function "is to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records" and then "to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." Secretary of the Navy Instruction 5420.193 enclosure 1 § 2(b). Once the BCNR completes its

review, it may "return" a case to a PEB for further adjudication.

Mr. Johnson did not at the time contest the 1992 PEB's adverse LOD determination. Thus, in August 1992, he was medically discharged from the Marine Corps without being evaluated for severance pay or medical retirement benefits.

Almost a quarter of a century later, in 2016, Mr. Johnson submitted a Freedom of Information Act ("FOIA") request and, in response, received a memorandum revealing the Commander's 1991 favorable line of duty determination. Mr. Johnson alleges he had no prior awareness of the Commander's finding.[2] Based on this new information, Mr. Johnson filed a *pro se* application with the BCNR. On April 12, 2017, the BCNR issued a decision reversing the 1992 PEB's LOD determination that the injury occurred outside the line of duty and "returning his record to the PEB to issue a disability rating and revised final disability adjudication in his case." J.A. 48. The BCNR did not address the issue of fitness for duty.

The BCNR's 2017 remand of Mr. Johnson's case was to an *ad hoc* PEB.[3] On February 26, 2018, this *ad hoc* PEB

---

[2] Mr. Johnson's complaint does not state when or how he became aware of the Commander's LOD determination. The Court of Federal Claims credited representations in Mr. Johnson's motion to dismiss briefing that he did not know about it until he received it in response to his 2016 FOIA request. The government does not dispute this on appeal.

[3] A PEB may be either *ad hoc* or formal. *See* Secretary of the Navy Instruction 1850.4E §§ 4201-17 (informal PEBs); *id.* at §§ 4301-42 (formal PEBs). An *ad hoc* PEB is one that is convened by the BCNR for the specific purpose of adjudicating a particular issue once a case is "returned;"

issued an initial determination reconsidering the 1992 PEB's findings and finding no evidence that Mr. Johnson was unfit for duty in 1992, even after the motor vehicle accident.[4]  Thus, the *ad hoc* PEB did not issue a disability rating; since Mr. Johnson did not meet the first requirement (lack of fitness) he could not be eligible for the benefits he sought regardless of whether he was entitled to a favorable LOD determination.  In reaching its fitness for duty conclusion, the *ad hoc* PEB relied on Mr. Johnson's post-discharge work as a teacher, which it found demonstrated his cognitive fitness.

Mr. Johnson had a right to challenge the preliminary findings of the *ad hoc* PEB by requesting a hearing within 15 days after the decision.  *See* Secretary of the Navy Instruction 1850.4E § 4216.  He chose not to do so, giving rise to a presumption that he accepted the preliminary decision.  *See id.*

Mr. Johnson then returned to the BCNR, this time with the assistance of counsel.  On May 15, 2020, the BCNR issued a decision accepting the *ad hoc* PEB's reasoning regarding Mr. Johnson's post-service teaching employment and noting that he had accepted the *ad hoc* PEB decision by failing to request a hearing before a formal PEB.

---

these *ad hoc* PEBs apply the same substantive standards as formal PEBs but do not conduct hearings.  *See id.* at § 4212(c) (requiring that all cases in which member requests hearing to be assigned to formal PEB).

[4]  Mr. Johnson's Opening Brief mentions a February 18, 2018 decision, which is not in the record.  We understand these to be references to the February 26, 2018 agency decision.

Thereafter, on February 16, 2024, Mr. Johnson filed his complaint in the Court of Federal Claims, asserting claims under the Tucker Act and 10 U.S.C. § 1201, the statute governing pay and retirement benefits for those discharged due to disability. He sought severance pay and military disability retirement pay from the date of his discharge (August 29, 1992) through June 30, 2017.[5] In response to the government's motion to dismiss the complaint as untimely, Mr. Johnson sought to demonstrate that three agency decisions – the April 2017 BCNR decision remanding for the *ad hoc* PEB "to issue a disability rating;" the February 2018 *ad hoc* PEB decision finding him fit for service; and the May 2020 BCNR decision affirming the *ad hoc* PEB's fitness determination and denial of benefits – each reset accrual of his claims, under one or both of the "reopening rule" and the "half-a-legal-loaf" doctrine.[6] The Court of Federal Claims rejected Mr. Johnson's arguments, granted the government's motion, and dismissed the complaint.

Mr. Johnson filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

Where, as here, the Court of Federal Claims dismisses a case for lack of subject matter jurisdiction based on undisputed facts, our review is de novo. *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir.

---

[5] Mr. Johnson has been awarded a 100% disability rating by the Department of Veterans Affairs, effective July 1, 2017.

[6] Mr. Johnson's brief in opposition to the government's motion to dismiss is not in the joint appendix filed by the parties on appeal, but can be found as Docket Entry 8 on the trial court's docket.

2009).   A plaintiff "bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).   In the procedural context in which this case arises, we "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Id.*

### III

Because the Tucker Act is a waiver of the government's sovereign immunity, its statute of limitations is jurisdictional and not subject to equitable tolling or waiver. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136-39 (2008).   Typically, the statute of limitations begins to run when a claim accrues, which is when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue" for the money owed. *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (internal quotation marks and citation omitted).[7]

In *Martinez*, the en banc court held that a Tucker Act claim for back pay from an allegedly unlawful discharge under the Military Pay Act, 37 U.S.C. § 204, accrues, and thus the statute of limitations under the Tucker Act begins to run, at the time of the discharge. *See id.* at 1303-05.   We further explained that a service member's "invocation of a permissive administrative remedy," such as a post-discharge request for relief from a military correction board,

---

[7] Claim accrual starts the running of the statute of limitations, while tolling pauses that clock. *See Martinez*, 333 F.3d at 1315-16 & n.5.   While the concepts are obviously related, they are distinct, and the issues presented in this appeal relate to accrual, not tolling.

"does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Id.* at 1304-05.

In *Jones v. United States*, 30 F.4th 1094, 1100-01 (Fed. Cir. 2022), we addressed accrual issues with respect to a Tucker Act claim for disability retirement benefits based on 10 U.S.C. § 1201, the same money-mandating statute Mr. Johnson invokes in support of his claims. We explained:

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board.

(internal quotation marks omitted); *see also Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005).[8]

---

[8] When a competent board denies entitlement to benefits *prior* to discharge, the claim for those denied benefits accrues and the statute of limitations under the Tucker Act begins running at the time of discharge. *See Martinez*, 333 F.3d at 1303. In *Chambers*, 417 F.3d at 1226-27, we recognized that when the first appropriate board renders its decision *after* discharge the claim generally accrues upon the board's decision rather than discharge itself.

These default rules for claim accrual have exceptions. *See Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990); *see also Martinez*, 333 F.3d at 1319.

Mr. Johnson invokes two exceptions to the default accrual rules: the "reopening rule" and the "half-a-legal-loaf doctrine." In Mr. Johnson's view, the reopening rule (which the trial court also referred to as the "subsequent administrative decision" rule), provides, where applicable, that a new decision by the PEB or the BCNR restarts the running of the statute of limitations. The Court of Federal Claims rejected Mr. Johnson's argument that either the February 2018 *ad hoc* PEB determination (finding him fit for service) or the BCNR's May 2020 decision (affirming that determination) reopened the issue of his eligibility for benefits and, thereby, reset the statute of limitations. The court found, instead, that Mr. Johnson's arguments were foreclosed by our en banc decision in *Martinez*, 333 F.3d at 1295, where we held that a BCNR denial of a service member's claim after discharge did not change the default accrual date of his wrongful discharge claim.

The half-a-legal-loaf doctrine provides that a new cause of action (or a continuing claim) accrues when "a favorable determination by the Correction Board (or comparable military tribunal) . . . stops short of giving the full relief it was compelled in law to grant on the presentation then made." *DeBow v. United States*, 434 F.2d 1333, 1335 (Ct. Cl. 1970). The Court of Federal Claims found this exception inapplicable because Mr. Johnson, in its view, had been provided "the entire remedial loaf" that had been ordered by the BCNR in February 2017. J.A. 8.

We agree with the Court of Federal Claims that neither the reopening rule nor the half-a-legal-loaf doctrine applies here. As we explain below, the PEB determined that Mr.

Johnson's injury was not sustained in the line of duty prior to his discharge, and so his claim for disability benefits accrued when he was discharged in August 1992. *See Jones*, 30 F.4th at 1100-01. His February 2024 filing of a Tucker Act claim was, as a result, well beyond the law's six-year statute of limitations and, consequently, untimely.

IV

The reopening rule did not "reset" the six-year statute of limitations governing Mr. Johnson's claim for military disability retirement benefits. As we held in *Martinez*, 333 F.3d at 1305, the default accrual rule for a Tucker Act claim is not altered by a subsequent application for reconsideration of an initial denial by a competent Board. Here, then, Mr. Johnson's claim accrued in August 1992, and the statute of limitations expired six years later, in 1998.

Contrary to Mr. Johnson's arguments, *Martinez*'s rule is not inconsistent with Supreme Court precedent. In *Interstate Commerce Commission v. Brotherhood of Locomotive Engineers*, 482 U.S. 270 (1987) ("*Brotherhood*"), the Supreme Court addressed the Hobbs Act's 60-day period for filing a petition for review from a final order of the Interstate Commerce Commission ("Commission"). *See also* 28 U.S.C. §§ 2341 *et seq.* *Brotherhood* stood for two propositions. First, it held that such a petition was timely under the Hobbs Act if filed within 60 days after the Commission issued an order refusing to reconsider a prior order.[9] *See* 482 U.S. at 277. This case does not arise under the Hobbs Act and we do not understand Mr. Johnson to rely on this

---

[9] The Supreme Court held that the appellants' challenge to dismissal of their petition was "unreviewable" for reasons unrelated to timeliness. *Brotherhood*, 482 U.S. at 277, 284-86.

exception.  Second, and more generally, *Brotherhood* recognized that, under both the Hobbs Act and the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, an agency's decision to reconsider a prior decision can initiate a new limitations period that can allow for judicial review of the underlying agency decision.  *See Stone v. Immigr. & Naturalization Servs.*, 514 U.S. 386, 392 (1995) (recognizing that *Brotherhood* extends to direct review of agency action under APA).  Mr. Johnson contends that *Brotherhood* requires us to recognize a similar "reopening rule" here, based on actions taken by the BCNR and the *ad hoc* PEB, which Mr. Johnson characterizes as reopening his claim.

*Brotherhood* does not sweep so broadly.  In that case, the Court considered the effect of the Commission's authority to "reopen and reconsider its prior actions" on the appeal period for direct judicial review of those actions.  482 U.S. at 277.  The Court held that subsequent final decisions by the Commission made under its reopening authority could constitute independently reviewable decisions.  *See id.*  That is different than the scenario involved here.  The Court of Federal Claims is not charged with reviewing a PEB or BCNR decision on direct review; it considers such decisions only indirectly in the course of determining entitlement to benefits.  As our predecessor court stated, "the sort of 'review' contemplated in an action to recover lost pay in the Court of Claims is an original suit for a money judgment and not a review looking to the alteration or correction of an official military record or to the compelling of official action by an officer of an executive department."  *Friedman v. United States*, 141 Ct. Cl. 239, 258-59 (1958).  This distinction makes Mr. Johnson's reliance on *Brotherhood* unavailing.

Furthermore, Mr. Johnson's claim in the Court of Federal Claims is brought under the Tucker Act, which was not at all implicated in *Brotherhood*.  Hence, the statute of limitations for Mr. Johnson's Tucker Act claim is governed by *Martinez*, not *Brotherhood*.  Accordingly, the statute of

limitations period for Mr. Johnson began to run when his claim for compensation accrued, which was upon his discharge, since he was denied benefits prior to his discharge.

Specifically, the 1992 PEB rendered its final decision in June 1992, prior to Mr. Johnson's August 1992 discharge. Mr. Johnson's claim accrued when he was discharged without benefits, and that is when the limitations period began running. As we made clear in *Martinez*, subsequent actions by the BCNR, in 2017 or 2020, or the *ad hoc* PEB in 2018, did not toll or restart the limitations period. *See* 333 F.3d at 1311. Nothing in *Brotherhood* undermines this holding.

Mr. Johnson also attempts to ground his reopening rule argument in a decision of the D.C. Circuit, *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997). This argument fails for the same reason. *Sendra* addressed the timeliness requirements of the APA, in relation to direct judicial review of agency decisions, and held that a reopening rule altered the default accrual of APA claims for purposes of judicial review, albeit "[o]nly when the agency has clearly stated or otherwise demonstrated that it has reopened the proceeding." *Id.* (internal quotation marks omitted). Pointing to purported textual similarities between the APA and the Tucker Act – the APA's statute of limitations, 28 U.S.C. § 2401(a), provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues," while the Tucker Act, 28 U.S.C. § 2501, states "[e]very claim of which the [Court of Federal Claims] has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues" – Mr. Johnson invites us to extend *Sendra*'s holding to what he contends is the "analogous" context of the Tucker Act. Open. Br. at 17-18.

We cannot accept this invitation. In *Martinez*, 333 F.3d at 1313, we expressly distinguished between an action

brought under the APA (for a change in discharge status) and a Tucker Act claim. We held that "[t]he difference is important" for purposes of determining claim accrual, emphasizing that because a Tucker Act claim necessarily requests monetary damages, a Tucker Act cause of action typically accrues when the pecuniary harm begins, e.g., as here, at the moment of the allegedly unlawful discharge from service. *Id.* An APA claim, by contrast, is not based on a monetary injury resulting from a discharge but, instead, from an impermissible agency action undertaken during mandatory agency review. *See id.* Thus, while a post-discharge action by a board may reset the clock for accrual of an APA claim – which is based on "a correction board decision denying an upgrade in discharge status" – the same is not true of a Tucker Act claim, which demands money payment to which the claimant is purportedly entitled as of the moment of his discharge.[10] *Id.*

In the end, then, Mr. Johnson's reliance on APA cases like *Sendra* rests on an analogy we rejected in *Martinez* and is unpersuasive. *See Davila v. United States*, 2022 WL 2827478, at \*6 (Fed. Cl. July 20, 2022) ("The Federal Circuit in *Martinez* acknowledged the distinction between the accrual of an APA claim and the accrual for a . . . claim under the Tucker Act.").[11]

---

[10] Mr. Johnson attempts to distinguish *Martinez* on the basis that, in 2017, the Board *granted* his requested line of duty classification and remanded to an *ad hoc* PEB, whereas in *Martinez* the Board *denied* the petitioner's requested relief. But this distinction makes no difference for purposes of claim accrual, which in these circumstances is not impacted by how the administrative tribunal resolved the pertinent claim.

[11] Mr. Johnson's reliance on two of our nonprecedential decisions fares no better. Both *Smalls v. United States*,

Mr. Johnson's final "reopening" argument is that narrow exceptions to claim accrual recognized by our predecessor court in *Eicks v. United States*, 172 F. Supp. 445, 462 (Ct. Cl. 1959), and *Friedman v. United States*, 310 F.2d 381, 395-96 (Ct. Cl. 1962), apply here. This contention, too, fails.

*Eicks*, 172 F. Supp. at 445, involved a service member's challenge to a secretary's rejection of a favorable decision from a corrections board. The Court of Claims held that the claim there did not accrue until the Secretary's adverse action, and that the claim was timely, as it was filed within six years of the Secretary's action. *See id.* at 448. Mr. Johnson's claim does not allege that the Secretary of the Navy ever rejected a favorable BCNR decision. For all the reasons we have already explained, Mr. Johnson's only claim accrued when he was discharged in 1992.

*Friedman*, 310 F.2d at 396, noted that a PEB decision "is not final" if "the armed service itself reopens the case." This rule, however, only applies "where the service itself moved to accord the plaintiff a new hearing on the basis of a new regulation or interpretation of the law." *Denton v. United States*, 204 Ct. Cl. 188, 196 (1974) (internal quotation marks omitted). In Mr. Johnson's case, all of the pertinent proceedings from 2017 on, at the PEB and BCNR, occurred at the request of Mr. Johnson, not as the result of voluntary action by the Navy. None of this activity was based on a new regulation or new interpretation of law. *Freidman*, then, like *Eicks*, does not apply.

---

298 F. App'x 994, 996-97 (Fed. Cir. 2008), and *Gaylord v. United States*, 2025 WL 2924912, at *3 (Fed. Cir. 2025), hold that claims were barred by the statute of limitations because they accrued at the time of discharge or at the time of the first decision by an appropriate board. They do not support a contrary outcome here.

At bottom, Mr. Johnson's varied attempts to fit his case into the narrow circumstances in which we have allowed for the "reopening" of claim accrual fail because his claim is one for monetary relief dating back to his 1992 discharge. While Mr. Johnson asserts that his complaint is focused on the 2018 PEB acting arbitrarily and capriciously by refusing to follow the BCNR's April 2017 instruction "to issue a disability rating and revised final adjudication," Open. Br. at 5-6 (discussing J.A. 48), and further alleges his complaint is about the 2020 BCNR affirmance of the 2018 PEB's "fit for duty" determination, J.A. 23, in fact the relief he is seeking is medical retirement backpay and other benefits related to his 1992 discharge. *See also* J.A. 26 (complaint requesting relief including retroactive award of "all the rights and benefits afforded a member of the USMC who was medically retired on August 29, 1992" and direction that Secretary "pay all wrongfully denied pay and allowances due Plaintiff under the law, including military disability retirement pay . . . from August 29, 1992"). When properly viewed as a claim under 10 U.S.C. § 1201[12] for military retirement pay and benefits, it was the 1992 PEB that was the first competent board to review his disability claim, and it was in 1992 that he was discharged; therefore, it was in 1992 that his claim accrued. *See Jones*, 30 F.4th at 1100-01; *Martinez*, 333 F.3d at 1311.

For all of these reasons, we agree with the Court of Federal Claims that no version of the "reopening rule" applies and renders Mr. Johnson's claim timely.

---

[12] This statute, which relates to payment of benefits, is expressly cited in Mr. Johnson's complaint, unlike the BCNR statute, 10 U.S.C. § 1552, which is nowhere referenced in the complaint.

V

Mr. Johnson next invokes the "half-a-legal-loaf" exception to the default accrual rule. Our precedents setting out the boundaries of this exception recognize "that a claimant can often found a new cause of action, or a 'continuing' claim, upon a favorable determination by the Correction Board (or comparable military tribunal) where that determination stops short of giving the full relief it was compelled in law to grant on the presentation then made." *DeBow*, 434 F.2d. at 1335. "A major reason" for this doctrine "is that, once the Board decides to give a remedy, it should not be free to slice the relief illegally or arbitrarily, sending the claimant forth with half-a-legal-loaf or even less." *Id.*

We are not persuaded by Mr. Johnson's arguments in favor of applying the half-a-legal-loaf exception here. Our precedents limit the doctrine to claims with respect to which a claimant is required to exhaust his administrative remedies before filing suit in the Court of Federal Claims. *See Rumph v. United States*, 228 Ct. Cl. 855, 857 (1981) (holding that half-a-legal-loaf exception "applies only . . . when the claimant was required to seek administrative relief before coming to the court"). "The creation of a permissive administrative remedy . . . does not affect the time period for which Congress has waived sovereign immunity and permitted judicial relief to be sought." *Martinez*, 333 F.3d at 1312.

Here, even Mr. Johnson concedes that he was not required to exhaust his administrative remedies before filing suit in the Court of Federal Claims. *See* Oral Arg., available at cafc.uscourts.gov/oral-arguments/25-1017_02022026.mp3, at 8:37-9:12; *see also Martinez*, 333 F.3d at 1304-05 (noting that BCNR offers permissive administrative remedy that does require exhaustion before seeking judicial relief). Because Mr. Johnson "could have brought timely suit . . . immediately upon his discharge,"

*Rumph*, 228 Ct. Cl. at 858-59, it is at that time that his claims accrued, and the half-a-legal-loaf exception to this default claim accrual rule does not apply.

## VI

We have considered Mr. Johnson's remaining arguments and find them unpersuasive.[13] Accordingly, for the reasons given above, the judgment of the Court of Federal Claims is affirmed.

**AFFIRMED**

COSTS

Each party to bear its own costs.

---

[13] Mr. Johnson forfeited several other arguments by relegating them to (at most) footnotes in his briefing. *See* Open. Br. at 19 n.11 (purporting to preserve arguments regarding additional exceptions to default accrual rules, including for government concealment, and faulting trial court's denial of his requests for production of administrative record); *see also* Oral Arg. at 1:24-56, 26:06-20 (distinguishing unfavorable LOD determination and 0% disability rating); *see also Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1305 (Fed. Cir. 2021) ("An issue that is merely alluded to and not developed as an argument in a party's brief is deemed waived."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases holding that "arguments raised in footnotes are not preserved").